UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

BRAEND MANUELA,

                     Plaintiff,         **<u>MEMORANDUM & ORDER</u>**
                                               24-CV-7159(EK)(RML)

       -against-

TOWER AUTO MALL, Inc.,

                     Defendant.

------------------------------------x
ERIC KOMITEE, United States District Judge:

         Plaintiff Braend Manuela brings this action against Tower Auto Mall, Inc.  Proceeding *pro se*, Manuela alleges that he wired Tower Auto a $1,000 down payment in connection with a car lease application, but that Tower Auto denied his application without explanation and retained his payment. Manuela brings four statutory claims — under the Fair Debt Collection Practices Act ("FDCPA"), Truth in Lending Act ("TILA"), Equal Credit Opportunity Act ("ECOA"), and Federal Reserve Act ("FRA").

         Tower Auto moves to dismiss for failure to state a claim, arguing none of the statutes apply to this transaction. For the following reasons, I grant Tower Auto's motion on all

claims, with leave for Manuela to amend his TILA and ECOA claims.

## I.    Background

The following facts are taken from the complaint and attached exhibits and are presumed to be true for purposes of Tower Auto's motion.  Manuela went to Tower Auto on October 20, 2023 and submitted an application to finance a 2022 Chevrolet Suburban.  Compl. 3, ECF No. 1.[1]  On the application, Manuela filled in a section labeled "This Section For Uber Lease To Own Customers Only."  *Id.* Ex. 1.  There, he indicated he had been an "Uber Partner" for "5 years."  *Id.*  In a separate portion of the application which asked where Manuela "worked currently," he wrote "Uber," noting again that he had been an Uber driver for 5 years.  *Id.*  Asked where he "plan[ned] to work with this car," Manuela also responded "Uber."  *Id.*

A salesperson for Tower Auto — Luis Alfaro Alvarez, who is not a party to this case — informed Manuela that he needed to provide personal information and a $1,000 down payment to secure the transaction.  *Id.* at 3.  Manuela provided the information and sent Tower Auto $1,000 via wire transfer from his business checking account.  *See id.* Ex. 2 (wire from "BUS

---

[1] The Complaint does not include continuous numbering throughout, so the paragraphs within the first section of numbering are cited by paragraph number, and the following non-numbered paragraphs are cited by page number.

COMPLETE CHK"). Two weeks later, Alvarez informed Manuela his application was denied. Compl. 3. Manuela requested an explanation and that the down payment be refunded, neither of which Alvarez or Tower Auto provided. *Id.* Between February and August 2024, Manuela mailed three letters to Tower Auto, complaining about the situation and Tower Auto's failure to respond, and requesting return of the down payment and explanation for the denial. *Id.* at 3-4*; id.* Ex. 3 (letter one), 5 (letter two), 7 (letter three).

Manuela alleges violations of four statutes: the FDCPA, TILA, ECOA, and FRA*. Id.* ¶¶ 1-3.[2] He seeks $224,000 in damages. *Id.* at 5-6. Tower Auto moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Def. Mot. to Dismiss ("Def. Mem."), ECF No. 14.

## II.  Legal Standard

On a motion to dismiss, "the court's task is to assess the legal feasibility of the complaint." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).[3] In doing so, the court "must take the facts alleged in the complaint as true, drawing all reasonable inferences in [the plaintiff's] favor." *In re*

---

[2] Plaintiff initially filed this action in the United States District Court for the Southern District of New York, which transferred the case to this Court pursuant to 28 U.S.C. § 1404(a). Transfer Order, ECF No. 6.

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

*NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007). *Pro se* complaints are "held to less stringent standards" than pleadings drafted by attorneys, and the Court will read a *pro se* complaint liberally and interpret it as raising the strongest claims it suggests. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Still, a *pro se* plaintiff is not exempt from "compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Thus, to survive a motion to dismiss, the complaint must plead sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. Discussion

Manuela's complaint does not state a claim under any of the four statutes he relies upon, for the reasons set forth below.  But Manuela may be able to plead a claim under TILA and the ECOA and will thus have leave to amend.

### A.    FDCPA

The FDCPA, 15 U.S.C. § 1692e, "prohibits third-party debt collectors from making certain false or misleading representations."  *Bongiovanni v. PennyMac Corp.*, No. 19-CV-3260, 2021 WL 1193043, at *6 (E.D.N.Y. Mar. 30, 2021).  The FDCPA applies only to "debt collectors," defined as individuals "who regularly collect[] or attempt[] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  It does not apply to creditors, who are individuals who "offer[] or extend[] credit creating a debt," and do not receive "an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  *Id.* § 1692a(4); *see also Houck v. U.S. Bank, N.A.*, 689 F. App'x 662, 664-65 (2d Cir. 2017) (FDCPA does not apply to creditors collecting their own debts).

Manuela fails to state a claim under the FDCPA because he has not alleged that Tower Auto is a debt collector.[4]  Courts in this circuit have consistently held that automobile finance companies do not constitute "debt collectors" under the FDCPA. *See, e.g.*, *Masudi v. Ford Motor Credit Co.*, No. 07-CV-1082, 2008 WL 2944643, at *3 (E.D.N.Y. July 31, 2008); *Carrington v. Chrysler Fin.*, No. 10-CV-1024, 2010 WL 1371664, at *2 (E.D.N.Y. Apr. 6, 2010).  This makes sense: automobile finance companies may extend credit to customers, creating their own debt, but do not "regularly collect[] or attempt[] to collect . . . debts owed or due or asserted to be owed or due *another*."  15 U.S.C. § 1692a (emphasis added).  Manuela alleges no facts suggesting that the defendant attempted "to collect on a debt other than its own" and is thus a "debt collector" under the FDCPA. *Masudi*, 2008 WL 2944643, at *3.

Tower Auto's motion is thus granted as to the FDCPA claim.

## B.    TILA

The Truth in Lending Act requires "meaningful disclosure of credit terms" in order to "protect the consumer against inaccurate and unfair" credit practices.  15 U.S.C.

---

[4] Even if Tower Auto were an FDCPA-covered debt collector, this claim would still be dismissed as Manuela has not alleged a personal debt for the reasons set forth in the discussion of TILA below.  *See Mueller v. I.C. Sys. Inc.*, No. 18-CV-336, 2019 WL 1863410, at *2 (E.D.N.Y. Apr. 25, 2019) (FDCPA covers only consumer debt); 15 U.S.C. § 1692a (defining consumer debt).

§ 1601(a); *see also Nero v. Uphold HQ Inc.*, 688 F. Supp. 3d 134, 144 (S.D.N.Y. 2023) ("The purpose of TILA is to assure a meaningful disclosure of credit terms in order to improve consumer decision-making and to protect the consumer against inaccurate and unfair credit practices."). TILA applies only to consumer transactions, which it defines as transactions "primarily for personal, family, or household purposes." 15 U.S.C. § 1602(i); *see also Nero*, 688 F. Supp. 3d at 144 (holding TILA does not apply "to credit extended primarily for business or commercial purposes").

The Second Circuit has not set a specific standard for determining a loan transaction's *primary* purpose. *Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 341 (S.D.N.Y. 2023). "[M]ost other courts" addressing this issue, including in-circuit district courts, have looked to "the entire transaction and surrounding circumstances to determine a borrower's primary motive." *Id.*; *see also Mauro v. Countrywide Home Loans, Inc.*, 727 F. Supp. 2d 145, 153-54 (E.D.N.Y. 2010) (collecting cases). The focus is on the intended "use of the loan proceeds," "not on the nature of the property securing the loan." *Krishtul v. VSLP United, LLC*, No. 10-CV-909, 2012 WL 13098290, at *8 (E.D.N.Y. June 11, 2012).

Dismissal is appropriate when a complaint does not sufficiently allege that the loan at issue was for consumer

credit.  *See Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*, 192 F. Supp. 3d 348, 356 (S.D.N.Y. 2016)*; Banus v. Citigroup Glob. Mkts. Inc.*, No. 09-CV-7128, 2010 WL 1643780, at *11 (S.D.N.Y. Apr. 23, 2010).

        Here, Manuela's complaint alleges his car lease was a "consumer credit transaction," with no further detail.  Compl. 3.  In his response to Tower Auto's motion, Manuela further asserts the vehicle financing was "primarily for personal, family, and household purposes."  Pl. Resp. to Def. Mot. to Dismiss ("Pl. Resp.") 9, ECF No. 16-3.[5]  But courts do not credit legal conclusions as "factual allegations" on a motion to dismiss, and more is needed than a bare recitation of the elements of a claim.  *Iqbal*, 556 U.S. at 678.  The complaint contains no factual content adequate to conclude that the transaction was for personal, family, or household purposes, let alone that it would have been entered into "primarily" for such a purpose.  15 U.S.C. § 1602.  He has therefore not adequately alleged a TILA claim.

        If anything, the facts alleged in the amended complaint and attached documents suggest relatively strongly that the transaction was *not* for personal use.  For example, Manuela appears to have used his business account to pay the

---

[5] "A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

lease down payment.  Compl. Ex. 2 (showing transfer from "BUS COMPLETE CHK" account).  While "the use of a business account does not establish that the loans were primarily for business purposes as a matter of law," it does militate in favor of that conclusion.  *Krishtul*, 2012 WL 13098290, at *9.  Similarly, the loan application was an Uber lease-to-own agreement, and when asked about where he "plan[ned] to work with this car" Manuela stated "Uber."  Compl. Ex. 1.  *See, e.g.*, *Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 791 (11th Cir. 2016) (affirming dismissal of TILA claim where car was leased "for business rather than consumer purposes").  The labeling of the loan agreement, Plaintiff's stated motivations, and payment via Manuela's business account all indicate this was likely a business transaction.  Thus, the Court grants Tower Auto's motion with respect to the TILA claim.

## C.    ECOA

The "ECOA provides that it is 'unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction[,] . . . on the basis of race, color, religion, national origin, sex or marital status, or age.'"  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) (quoting 15 U.S.C. § 1691(a)).  To plead a *prima facie* claim under the ECOA a plaintiff must allege that "(1) he was a member of a protected class, (2) he applied for

credit from the defendant, (3) he was qualified for credit but the defendant denied his credit application, and (4) the defendant continued to engage in the type of transaction in question with other parties with similar qualifications." *Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 526 (S.D.N.Y. 2015); *see also Thompson v. Marine Midland Bank*, 198 F.3d 235, 1999 WL 752961, at *2 (2d Cir. 1999) (unpublished table decision) ("Proof of intentional discrimination under the ECOA generally follows the same burden-shifting methodology employed in Title VII cases."). *But see Kwiatkowski v. J.P. Morgan Chase & Co.*, 96 F. App'x 789, 790 (2d Cir. 2004) ("[T]his Court has not yet reached the question of whether [Title VII's burden shifting] methodology applies to credit discrimination cases."). Credit is defined as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor."  15 U.S.C. § 1691a(d).

Based on this definition, the Second Circuit has indicated that the ECOA does not apply to transactions involving "a payment schedule that obligated the [plaintiffs] to make incremental payments as the [contract performance] progressed." *Shaumyan v. Sidetex Co.*, 900 F.2d 16, 18 (2d Cir. 1990).  The court reasoned that making incremental payments is not the same as deferring payments.  *Id.*  But the Second Circuit has not

explicitly addressed whether leases or lease-to-own agreements qualify.  And the courts that have addressed leases have diverged on the question.  *Compare, e.g.*, *Laramore v. Ritchie Realty Mgmt. Co.*, 397 F.3d 544, 546-47 (7th Cir. 2005) (residential lease not credit), *and Consumer Fin. Prot. Bureau v. Snap Fin. LLC*, No. 23-CV-462, 2024 WL 3625007, at *7 n.10 (D. Utah Aug. 1, 2024) ("[A] consumer lease-to-own agreement [does] not create a credit arrangement . . . ."), *with Brothers v. First Leasing,* 724 F.2d 789, 792-93 & n.8 (9th Cir. 1984) (consumer lease is credit).

Regardless of whether a lease-to-own agreement is a covered credit transaction, Manuela's allegations do not make out other elements of the ECOA.  All Manuela alleges is that Tower Auto "discriminated against [him] as an applicant."  Compl. ¶ 2.  This is insufficient to establish the required *prima facie* case.

For example, Manuela provides no indication that he is a "member of a protected class."  *Dae Hyuk Kwon v. Santander Consumer USA*, 742 F. App'x 537, 540 (2d Cir. 2018) (affirming ECOA dismissal because plaintiff failed to allege membership in a protected class); *see* 15 U.S.C. § 1691(a)(1).  Likewise, Manuela does not allege he was "qualified for credit." *Kwiatkowski*, 96 F. App'x at 790 (dispositive under the ECOA that plaintiff "was not qualified for the requested loans").

Finally, Manuela does not allege that Tower Auto "continued to engage in the type of transaction in question with other parties with similar qualifications." *Germain*, 111 F. Supp. 3d at 526. To allege this portion of the *prima facie* case, courts generally require allegations that non-protected parties were "treated more favorably" than plaintiff. *E.g.*, *Sarakhman v. Sumitomo Mitsui Fin. & Leasing Co., LTD.*, No. 24-CV-5817, 2025 WL 2494288, at *4 (S.D.N.Y. Aug. 29, 2025); *Frederick v. Cap. One Bank (USA), N.A.*, No. 14-CV-5460, 2015 WL 5521769, at *4 (S.D.N.Y. Sept. 17, 2015), *reconsideration denied*, 2015 WL 8484560 (S.D.N.Y. Dec. 8, 2015). In opposing the motion, Manuela alleges that Tower Auto's failure to provide any "individualized explanation" demonstrates some disparate treatment. Pl. Resp. 12. But Manuela cites no instance in which Tower Auto provided someone else an individualized explanation.

Tower Auto's motion to dismiss Manuela's ECOA claim is granted.

**D.    FRA**

Manuela also brings claims under Sections 503 and 504 of the Federal Reserve Act. Compl. ¶ 3. "There is no private right of action under the Federal Reserve Act." *Scriven v. Barnum*, No. 24-CV-1805, 2024 WL 1769318, at *1 (E.D.N.Y. Apr.

24, 2024); *see also* 12 U.S.C. § 504 (FRA imposes a civil monetary penalty rather than a private right of action).

As the FRA does not provide a private right of action, his claims must be dismissed.[6] *Scriven*, 2024 WL 1769318, at *1; *Fair v. Verizon Commc'ns Inc.*, 621 F. App'x 52, 53 (2d Cir. 2015) (explaining dismissal for failure to state a claim is warranted when an individual suit is brought under a federal statute that "does not provide a private right of action").

## IV.    Leave to Amend

As an alternative to dismissal, Manuela requests "leave to amend." Pl. Resp. 15. A *pro se* plaintiff should be granted leave "to amend [the] complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999).

Plaintiff is granted leave to amend his TILA and EOCA claims, as he may be able to cure the issues discussed above.

---

[6] The FRA including its imposed liability and penalties in Section 503-04, only applies to "bank[s]" including "state bank[s], banking association[s], and trust compan[ies]" as well as "national banks" and "Federal reserve banks." 12 U.S.C. § 221. It is unlikely Tower Auto should be considered a bank. Plaintiff cites no case to suggest that Defendant is a bank. *Cf. Madden v. Midland Funding, LLC*, 786 F.3d 246, 252 (2d Cir. 2015) (department stores issuing credit cards to customers are "non-national bank entities"). At their core, banks accept deposits and provide loans. Here, Tower Auto accepts no deposits and only provides loans for the purchase of its own goods.

His FDCPA and FRA claims, however, must be with prejudice, as amendment would be futile.

Cite If he has not done so already, plaintiff may wish to contact the City Bar Justice Center's Federal Pro Se Legal Assistance Project at 212-382-4729 to make an appointment for free, confidential, limited-scope legal assistance.[7]

Manuela may file an amended complaint on or before December 3, 2025.  Any amended complaint will completely replace, not supplement, the prior complaint.  Therefore, the amended complaint must include all claims and factual allegations against all defendants, must be captioned an "Amended Complaint," and should bear the same docket number as this Memorandum and Order.

### V.    Conclusion

For the foregoing reasons, Manuela's complaint is dismissed with leave to amend.  If Manuela does not file an amended complaint by December 3, the Clerk of Court will terminate this case.  The Clerk of Court is directed to mail a copy of this Memorandum and Order to plaintiff and to note the mailing on the docket.

---

[7] Some of plaintiff's claims may sound in state law — for instance, raising common-law concepts of conversion, unjust enrichment, and / or breach of contract.  This Court states no view on whether those claims would, if brought in state court, be held timely or meritorious.  Still, plaintiff may want to explore this avenue with legal counsel.

SO ORDERED.


_/s/ Eric Komitee_____
ERIC KOMITEE
United States District Judge


Dated:     November 5, 2025
           Brooklyn, New York